FILED
2016 Apr-19 PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DR. JOHN T. CARPENTER, JR.,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.:  2:15-CV-1812-RDP |
| } | |
| **THE BOARD OF TRUSTEES OF THE** } | |
| **UNIVERSITY OF ALABAMA, et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This matter is before the court on Motions to Dismiss filed by (1) the University of Alabama Health Services Foundation, P.C. (Doc. # 4) and (2) the Board of Trustees of the University of Alabama.  (Doc. # 5).  The Motions have been fully briefed. (Docs. # 9, 11, 15 and 16).

**I.     Background**

The Board of Trustees of the University of Alabama ("the Board of Trustees") is the body responsible for governance of the University of Alabama system, including the University of Alabama at Birmingham.  (Doc. # 1-1 at ¶ 3).  The University of Alabama Health Services Foundation, P.C. ("Health Services Foundation" or "HSF") is a corporation through which all UAB medical care is provided.  The HSF operates the Kirklin Clinic at UAB Hospital where Plaintiff was employed.  (Doc. # 1-1 at ¶ 3).

Plaintiff was a tenured professor and physician at UAB.  (Doc. # 1-1 at ¶ 1).  Immediately prior to his "forced" resignation in 2013, Plaintiff was a Professor of Surgery in the Division of Surgical Oncology, a Professor of Clinical Pathology, and a Professor of Medicine in the

Division of Hematology and Oncology, all at UAB.  (Doc. # 1-1 at ¶¶ 9-10).  He was also a Senior Scientist at the Comprehensive Cancer Center at UAB. (Doc. # 1-1 at ¶ 11).

On or about September 10, 2013, Plaintiff was called to attend a meeting with Dr. Pasche and he was confronted about his care of a particular patient and the results of a risk management investigation into his treatment of that patient.  (Doc. # 1-1 at ¶¶ 22-24).  Plaintiff was presented with two options: "either resign voluntarily, or contest the recommendation, which would lead to a formal hearing which would be reported to the national practitioner database."  (Doc. # 1-1 at ¶ 25).

On or about September 12, 2013, Plaintiff again met with Dr. Pasche who explained "that [Plaintiff's] continuing to practice at UAB was not acceptable.  According to Pasche, resignation was [Plaintiff's] only choice."  (Doc. # 1-1 at ¶ 29).  "Dr. Pasche asked [Plaintiff] to sign a letter of resignation which he (Pasche) had prepared."  (Doc. # 1-1 at ¶ 31).  Plaintiff did so.  (*Id.*). Later, when Plaintiff attempted to explore his options, he was told that his "resignation was voluntary and was not negotiable."  (Doc. # 1-1 at ¶ 35).

On September 14, 2015, Plaintiff filed his Complaint against Defendants in the Circuit Court of Jefferson County, Alabama.  (Doc. # 1-1).  Plaintiff's Complaint contains one count alleging that both Defendants and/or their agents denied him due process of law and equal protection of the law under the Constitution of Alabama of 1901, Article I, §§ 1, 6, and 22, and the United States Constitution, Amendment XIV . . . ."  (Doc. # 1-1 ¶ 49; Doc. # 9 at 3).

## II.     Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, the complaint must include enough facts "to raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party.  *Watts v. Fla. Intl. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).  That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556.  Further, "courts may infer from the

factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

## III.  Discussion

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under Section 1983, a plaintiff must allege that: (1) defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001); *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998).

The court addresses the motions filed by the Board of Trustees and Health Services Foundation in turn below.

### A.  The Board of Trustees

The parties have raised the following arguments related to the motion to dismiss.

#### 1.  Waiver

Plaintiff first argues that by removing this case, the Board of Trustees waived its immunity defenses. The court disagrees. A defendant merely waives immunity to a federal forum by removal. "[A] state can waive its forum immunity but retain other aspects of sovereign immunity, including immunity from liability for certain claims." *Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013) (holding that removal to federal court did not affect the availability of defendant's immunity defense to Plaintiff's ADEA claim). "[T]he removing State retains all

defenses it would have enjoyed had the matter been litigated in state court, including immunity from liability." *Stroud*, 722 F.3d at 1303 (citing *Lombardo v. Penn., Dep't of Pub. Welfare*, 540 F.3d 190, 198 (3d Cir. 2008)).

### 2. *Ex Parte Young* Exception

The Board of Trustees argues that it is entitled to Eleventh Amendment immunity to Plaintiff's Section 1983 claim. Plaintiff argues that he seeks only declaratory and injunctive relief and, thus, his claim falls squarely within the *Ex parte Young* doctrine. The Eleventh Amendment to the United States Constitution bars claims for money damages under 42 U.S.C. § 1983 against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). However, under the *Ex parte Young* doctrine, actions against a state official for prospective injunctive relief are outside the protection offered by the Eleventh Amendment. *Id.* at 102-03; *see Carr v. City of Florence*, 916 F.2d 1521, 1524 n.2 (11th Cir. 1990). "Under the doctrine enunciated in *Ex parte Young,* a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).

There are two problems for Plaintiff here. First, he does not merely request prospective injunctive relief. He also requests that he be awarded "all pay and benefits to which he would have been entitled" (Doc. # 1-1 at ¶49), *i.e.*, back pay. Second, the *Ex parte Young* exception applies only in "suits seeking declaratory and injunctive relief *against state officers in their official capacities*," *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269 (1997) (emphasis added), and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought," *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146

(1993). Because Plaintiff has named no state official in his or her official capacity as a defendant in this case, he is not permitted to invoke *Ex parte Young* to circumvent the Eleventh Amendment bar. *See Wayne v. Florida Dep't of Corr.*, 2016 WL 193800, at *2 (S.D. Fla. Jan. 15, 2016).

### 3. Eleventh Amendment Immunity

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "Although the express language of the [Eleventh] [A]mendment does not bar suits against a state by its own citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)).

> There are two exceptions to Eleventh Amendment immunity:
>
> First, Congress can abrogate eleventh amendment immunity without the state's consent when it acts pursuant to the enforcement provisions of section 5 of the fourteenth amendment. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Second, a state may waive its immunity expressly through legislative enactment. "[I]n the absence of consent [,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

*Carr*, 916 F.2d at 1524 (internal footnote omitted). Neither exception applies here. Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). And the State of Alabama has not waived its immunity. *See* Ala. Const. Art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."). Therefore, the court must dismiss the Section 1983 claim against the Board of Trustees as a matter of law. *See Shuler v. Bd. of Trustees of Univ. of Ala.*, 480 Fed. Appx. 540, 544 (11th Cir.

2012) (finding no error in district court's decision to grant judgment in favor of UAB on plaintiff's § 1983 claims because the Board is entitled to Eleventh Amendment immunity); *Eubank v. Leslie*, 210 Fed. Appx. 837, 844 (11th Cir. 2006) (holding that "The University of Alabama Board of Trustees is a state agency" and finding that "the district court did not err in dismissing [the plaintiff's] claim for injunctive relief on Eleventh Amendment immunity grounds").

### 4.  State Constitutional Claims

The Board of Trustees is also immune under the Alabama Constitution, which states, in relevant part, that the "State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14; *Hutchinson v. Bd. of Trs. of Univ. of Ala.*, 256 So.2d 281, 283 (Ala. 1971). The Alabama Supreme Court has described this immunity as "almost invincible," *Ala. State Docks v. Saxon*, 631 So.2d 943, 946 (Ala. 1994), and one that bars "almost every conceivable type of case," *Hutchinson*, 256 So.2d at 282; *see also, Rollins v. Bd. of Trustees of the Univ. of Alabama*, 2014 WL 4829540, at *7 (N.D. Ala. Sept. 29, 2014), *aff'd*, (11th Cir. Apr. 11, 2016).

Because the Board of Trustees is immune from the claims asserted in Plaintiff's Complaint, its Motion to Dismiss is due to be granted.

### B.  Heath Services Foundation

Health Services Foundation argues that it is a private entity, and because it is not a state actor, Plaintiff's claims under the United States and Alabama Constitutions cannot lie against it. Plaintiff contends that legal precedent establishes otherwise.  He points to *Univ. of Ala. Health Services Foundation, P.C. v. Bush By and Through Bush*, 638 So.2d 794, 798 (Ala. 1994), where the Alabama Supreme Court stated that the HSF "is a nonprofit professional corporation

established by the faculty of the University of Alabama School of Medicine and, in part, acts as a billing service for those physicians. Only physicians on the faculty of the medical school and third-year medical residents receive income from the Foundation." However, the Alabama Supreme court has also held that hospitals owned and operated by state universities were a part of the state entitled to immunity. *Health Care Authority for Baptist Health v. Davis*, 158 So.3d 397, 404 n.5 (Ala. 2013).

Plaintiff's argument in this regard is interesting. Plaintiff argues that the "HSF and UAB act as one in the same entity. UAB Hospital is part of the UAB School of Medicine, the School of Medicine is part of UAB, and UAB is, in turn, "part of the state." (Doc. # 11 at 5). However, if the court accepts Plaintiff's argument that the HSF and UAB are both "part of the state," then the HSF, at least arguably, would be entitled to the immunities which, as discussed above, require dismissal of Plaintiff's claim against the Board. In any event, however, the court cannot make that determination as a matter of law on this record.

However, even if the HSF is a private entity, in certain circumstances, a private party may be considered a state actor for purposes of Section 1983. *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 938-39 (1982). The Eleventh Circuit directs district courts to determine whether one of three conditions is met for private parties such as the HSF to be deemed state actors:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) "the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]" ("nexus/joint action test").

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *NBC, Inc. v. Commns. Workers of Am.*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)).

Plaintiff's Complaint alleges that the HSF "operates the Kirklin Clinic at UAB Hospital wherein Plaintiff was employed." (Doc. # 1-1 at ¶ 3).  Plaintiff's Complaint further alleges that various physicians, as well as the Provost, the Dean of the School of Medicine, and University legal counsel, engaged in conduct regarding his employment that he claims deprived him of procedural due process and equal protection under the law in effecting his involuntary resignation.  The court concludes, based on judicial experience and common sense, that these allegations are sufficient to plausibly allege that the relationship between the Board and the HSF may satisfy either the State compulsion test or the nexus/joint action test as a basis for holding the HSF liable on Plaintiff's constitutional claims.  Of course, how these facts actually bear out after discovery remains to be seen.  Based on the allegations of the Complaint, however, the HSF's Motion to Dismiss is due to be denied.

**IV.     Conclusion**

For the forgoing reasons, the court finds the University of Alabama Health Services Foundation, P.C.'s Motion to Dismiss (Doc. # 4) is due to be denied, and the Board of Trustees of the University of Alabama's Motion to Dismiss (Doc. # 5) is due to be granted, and Plaintiff's claims against the Board of Trustees of the University of Alabama are due to be dismissed with prejudice.  This dismissal shall not affect any other right, claim or cause of action which Plaintiff has, or may have, against the remaining Defendant.

A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this April 19, 2016.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE