UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN T. CARPENTER, JR., | } |
| Plaintiff, | } |
| v. | } Case No.: 2:15-cv-01812-RDP |
| UNIVERSITY OF ALABAMA HEALTH SERVICES FOUNDATION, P.C., | } |
| Defendant. | } |

**MEMORANDUM OPINION**

This case is before the court on the Motion for Summary Judgment filed by Defendant University of Alabama Health Services Foundation, P.C. ("Defendant" or "UAHSF"), the sole remaining Defendant in this case. (Doc. # 40). The parties have fully briefed this Motion (Docs. # 41, 44, 48), and it is under submission. In this suit, Plaintiff seeks a declaration that his departure from the staff of UAHSF, as well as the faculty of the University of Alabama at Birmingham's ("UAB") School of Medicine, violated his procedural due process rights under federal law and Alabama state law. (Complaint at ¶ 49).[1] He also seeks an order directing a "hearing in accordance with requirements of law and UAB's own internal procedures for termination of tenured faculty," reinstatement pending such a hearing, restoration of clinical privileges, and back pay. (*See id.*). Defendant argues that any claim against it is moot, that Plaintiff waived his procedural due process rights by resigning, and that it is not a state actor who

---

[1] Plaintiff's Complaint is located in Document # 1-1. Plaintiff also alleges in the Complaint that his departure from employment violated his equal protection rights (Complaint at ¶ 49), but he presents no argument in support of an equal protection violation in his opposition brief. (*See generally* Doc. # 44). Therefore, the court concludes that any equal protection claim asserted against Defendant in the Complaint has been abandoned. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325-26 (11th Cir. 2000) (holding that a state law claim was effectively abandoned when a party failed to brief and argue the issue before the district court).

must comply with procedural due process requirements. After careful review, and for the reasons explained below, the court concludes that Defendant is entitled to summary judgment on the federal procedural due process count raised against it, and that Plaintiff cannot succeed on any federal procedural due process claim because the undisputed evidence shows he voluntarily resigned from his faculty and staff positions.

I.     **Factual Background**[2]

In August 1973, the UAB School of Medicine hired Plaintiff as a professor. (Carpenter Deposition at 24).[3] Plaintiff obtained tenure at UAB in 1977. (*Id.*). In 1974, Plaintiff signed an employment agreement with Defendant. (Doc. # 40-7). That employment agreement stated that Plaintiff was "a regular member of the Faculty of the School of Medicine of the University of Alabama in Birmingham." (*Id.* at 2). Ultimately, Plaintiff worked at UAB's School of Medicine for forty years. (Carpenter Deposition at 24). Plaintiff practiced "oncology with a specialty in breast cancer." (*Id.* at 15).

In September 2013, Dr. Boris Pasche, who worked as the deputy director of the cancer center at UAB's School of Medicine, received a call from Dr. Jennifer De Los Santos. (Pasche Deposition at 5, 31).[4] De Los Santos informed Pasche that she had reported Plaintiff to a risk management committee because Plaintiff had utilized hormone therapy for a long period of time

---

[2] The facts set out in this opinion are gleaned from the parties' submissions and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[3] Plaintiff's deposition transcript, referred to as the "Carpenter Deposition", is located in Document # 40-4. This Memorandum Opinion cites the minuscript pages of that deposition. When citing exhibits to Plaintiff's deposition, this Memorandum Opinion cites the electronically-generated CM/ECF page numbers.

[4] Pasche's deposition transcript, referred to as the "Pasche Deposition", is located in Document # 40-5. This Memorandum Opinion cites the minuscript pages of that deposition. When citing exhibits to Pasche's deposition, this Memorandum Opinion cites the electronically-generated CM/ECF page numbers

on a patient whose breast cancer was progressing. (*Id.* at 31). Plaintiff has recounted that he kept the patient on hormone therapy because she suffered from severe depression for several months before agreeing to undergo chemotherapy. (Carpenter Deposition at 61-62). Pasche instructed Dr. Lisle Nabell to review Plaintiff's patient records to determine whether the reported issue was an isolated incident. (Pasche Deposition at 34). Pasche also contacted Dr. Robert Bourge, who served as the vice chair of clinical affairs in UAB's Department of Medicine, to inform him about the faculty issue. (*Id.* at 31-32). According to Pasche, Bourge discussed the matter with the risk management department and Dr. Seth Landefeld, the chair of UAB's Department of Medicine, and asked Pasche to set up a meeting with Plaintiff. (*Id.* at 32).

Plaintiff has testified that, on September 10, 2013, Pasche's secretary contacted him around 4:00 P.M. and asked him to attend a meeting at Pasche's office after Plaintiff finished his clinical assignments. (Carpenter Deposition at 57). Plaintiff received no advance warning about the purpose of the meeting. (*Id.* at 59). Plaintiff entered the meeting and observed Pasche, Bourge, and other administrators from Landefeld's office. (*Id.* at 57-58). Pasche informed Plaintiff of De Los Santos's complaint that Plaintiff had continued preoperative treatment of a cancer patient for an unusually long period. (*Id.* at 60-61). According to Plaintiff, Pasche offered him no opportunity to respond to the complaint. (*Id.* at 66). Pasche also explained to Plaintiff that he had discussed the matter with the risk management committee and that "he had told the committee that he thought [Plaintiff] had no clinical judgment, and that if anybody came to see me on a given day, that . . . there was absolutely no way to predict what advice [Plaintiff] might give them." (*Id.* at 62-63). Pasche related to Plaintiff that the risk management committee had concluded that such a doctor could not practice at UAB. (*Id.* at 63). Pasche told Plaintiff that he "would have to resign." (*Id.*).

3

After Pasche discussed the incident that led to the meeting, Bourge told Plaintiff "in a rather leering voice" that Plaintiff's "other alternative [was] to go to a hearing, the reports of which [would] be reported to the National Practitioner Database."[5] (*Id.* at 63). Bourge boasted that he had never lost such a hearing. (*Id.* at 63-64). Bourge did not describe how such a hearing would be conducted. (*Id.* at 164-65). Plaintiff was permitted to complete his patient notes but told that his patients would be reassigned to other doctors. (*Id.* at 64). Pasche and Bourge did not ask Plaintiff to decide whether to resign during the meeting. (*Id.* at 67). They did not give him a specific period of time in which to decide whether to resign or contest the charges.[6] (*Id.*). After the meeting adjourned, Pasche told Plaintiff "that he felt that it would not be possible to get the [risk management] committee to reconsider its decision, and that he also thought that it would not be possible for [Plaintiff] to practice there given the information he had told them about [Plaintiff]." (*Id.* at 75-76). Pasche explained that Plaintiff might be able to continue teaching and research in a voluntary, unpaid faculty position. (*Id.* at 76).

Plaintiff has testified that the September 10 meeting intimidated him because he had received no advance warning that he would be asked to resign. (*Id.* at 64). He felt that the complaint "distorted" the clinical care he had provided. (*Id.* at 159). He understood that Pasche and Bourge had presented him a choice to either resign or contest the charges against him in a formal proceeding. (*Id.* at 66-67). But, Plaintiff believed that he would not be reinstated because he had been told that the risk committee's decision was final and Pasche had asserted that he "would never recommend [Plaintiff] for practice again." (*Id.* at 159-60). And, if the termination

---

[5] In an affidavit, Bourge has explained that the hearing would have been conducted by the "Credentials Committee of the UAB Health System." (Doc. # 40-3 at 2-3).

[6] Plaintiff testified during his deposition that he could not recall a specific period of time in which to decide. (Carpenter Deposition at 67). A confidential note to file asserts that Bourge instructed Plaintiff to decide and call him at 8:00 A.M. on September 11, 2013. (Doc. # 40-5 at 99). Plaintiff has not relied on this Rule 56 evidence of an instructed timeframe for a decision as a material fact supporting his duress argument (*see* Doc. # 44 at 6, 8-13), and the court assumes that this is not a material fact.

4

was reported to the National Practitioner Database, Plaintiff believed that he would have to explain the reasons for the termination to another prospective employer. (*Id.* at 160-61).

When he returned to his office on September 10, Plaintiff told his nurse that he was "going to have to resign." (*Id.* at 80-82). Plaintiff briefly described the meeting to his wife and "told her that I was going to be forced to resign because of the things that had been said about me." (*Id.* at 83-84). Plaintiff did not speak with an attorney after the meeting and did not speak to anyone else at UAB on September 11, 2013. (*Id.* at 85). He discussed the meeting with one or two friends, but he cannot recall what he discussed during those conversations. (*Id.*). On September 11, 2013, Plaintiff "mostly thought about what had happened and tried to put some perspective on it and to think about realistic likelihoods of pursuing one way or another." (*Id.*). He drafted some notes for the patients he had seen on September 10. (*Id.* at 86). He did not attend a meeting of UAB's institutional review board on September 11.[7] (*Id.* at 104-05). On September 11, a UAB employee drafted a resignation letter for Plaintiff, in which he would resign from his positions at UAB and UAHSF. (*See* Doc. # 40-5 at 85).[8]

On September 12, 2013, Plaintiff met with Pasche again for twenty to thirty minutes. (Carpenter Deposition at 89-90). During that meeting, Pasche reiterated that "he thought there was no possibility of reconsideration or reversal of the committee's decision and that he thought

---

[7] Ferdinand Urthaler has averred that Plaintiff attended a meeting of UAB's institutional review board on September 11. (Doc. # 40-2). At the summary judgment stage, the court must credit Plaintiff's account of the events.

[8] Plaintiff has mentioned in his opposition brief that some UAB employees discussed an irregular retirement for him -- with termination of clinical privileges -- on September 11, 2013. (Doc. # 44 at 11) (referring to Doc. # 40-5 at 81-82, 84). Defendant offers no explanation for these communications, but the Rule 56 record shows that Bourge communicated Plaintiff's desire to retire to other UAB employees on September 11. (Doc. # 40-3 at 7). Plaintiff has argued in his opposition brief that he resigned under duress on September 12, 2013 when he signed a pre-written resignation letter. (Doc. # 44 at 21). And, according to Defendant, Plaintiff's 42 U.S.C. § 1983 claims would be time-barred if he resigned from employment on September 11, 2013. (Doc. # 41 at 10 n. 2). Ultimately, when viewed in the light most favorable to Plaintiff, the Rule 56 evidence does not suggest that the conduct of UAB employees on September 11, 2013 materially contributed to any duress Plaintiff faced when he executed a resignation letter on September 12.

5

there was zero chance that [Plaintiff] could ever practice again at UAB no matter what." (*Id.* at 89). Pasche presented Plaintiff with a pre-written resignation letter. (*Id.* at 90). The letter states that Plaintiff voluntarily resigned from his professorship at UAB and his staff position at UAHSF, effective September 30, 2013. (Doc. # 40-4 at 60). It also states that Plaintiff would "provide a written plan for ongoing research and academic activities" that he wished to continue pursuing. (*Id.*). Plaintiff signed the resignation letter during the meeting. (Carpenter Deposition at 90-91). When he signed the letter, he believed that he was choosing to resign and foregoing a termination hearing. (*Id.* at 35, 92-93). Thereafter, on September 12, Pasche sent an email to the oncology faculty and staff at UAB informing them of Plaintiff's retirement. (Doc. # 40-4 at 61).

After submitting the resignation letter, Plaintiff had second thoughts and decided that he did not want to resign from UAB. (Carpenter Deposition at 35). In late September 2013, Plaintiff met with Landefeld and asked him for permission to withdraw the resignation. (*Id.* at 35-36, 99-100). Plaintiff brought medical articles to support his preoperative treatment of a patient, but Landefeld explained that he could not evaluate the matter. (*Id.* at 100-01). Landefeld told Plaintiff that he could only regain clinical privileges if Pasche and Nabell agreed to reinstate them. (*Id.* at 101). In late September or early October 2013, Landefeld met with Plaintiff and Dr. Kirby Bland in another meeting. (*Id.* at 101-02). Thereafter, Plaintiff discussed a possible reinstatement with Nabell and asked if she would support his reinstatement. (*Id.* at 108-09). In an October 16, 2013 email to Landefeld, Bourge confirmed that Nabell and he did not support Plaintiff's reinstatement. (Doc. # 40-5 at 90). (*See also id.* at 94-95) (emails by Nabell and Pasche discussing their opposition to Plaintiff's reinstatement). On November 20, 2013, a senior associate dean at UAB told Plaintiff that (1) UAB and UAHSF had accepted his

6

resignation, (2) no mechanism existed for rescinding an accepted resignation, and (3) the resignations were final. (*Id.* at 68-69).

## II.     Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III. Analysis

As explained above, Defendant raises several arguments for dismissal of this action, but the court need only consider its position that Plaintiff submitted a voluntary resignation.

#### A. As a Matter of Law, Plaintiff Voluntarily Resigned and Voluntarily Relinquished Any Property Interest in Continued Employment

Defendant insists that Plaintiff voluntarily resigned from his positions at UAB and UAHSF. (Doc. # 41 at 10-12). Plaintiff responds that he resigned under duress because: (1) Pasche told him that he could no longer see patients and would have to resign; (2) Bourge threatened to report any hearing to the National Practitioner's Database, which Plaintiff feared would preclude his future employment; (3) Bourge bragged that he had never lost a termination hearing; (4) Pasche told him that the reviewing committee would not change its mind; (5) Plaintiff was unfamiliar with his procedural rights; and (6) Plaintiff suffered from disorientation and shock following the meeting. (Doc. # 44 at 20-22). For the following reasons, the court agrees with Defendant that, as a matter of law, Plaintiff did not submit his resignation under duress.

It is well settled that an employee with a property interest in continued employment voluntarily relinquishes that property interest if he resigns "of his own free will[,] even though prompted to do so by events set in motion by his employer." *Hargray v. City of Hallandale*, 57 F.3d 1560, 1567 (11th Cir. 1995) (quoting *Stone v. Univ. of Md. Med. Sys., Corp.*, 855 F.2d 167, 173 (4th Cir. 1988)). In that situation, an employer has not deprived the employee of a property interest within the meaning of the Fourteenth Amendment's due process clause. *Id.* An employer can deprive an employee of such a property interest by extracting an involuntary resignation. *Id.* at 1568. An employee's resignation is deemed involuntary "(1) where the employer forces the resignation by coercion or duress, . . . or (2) where the employer obtains the

9

resignation by deceiving or misrepresenting a material fact to the employee." *Id.* (citations omitted). Here, Plaintiff has not argued that anyone deceived him or misrepresented a material fact, and he only claims that Defendant obtained the resignation through duress. (*See* Doc. # 44 at 20-22). Therefore, the court only addresses whether Defendant obtained Plaintiff's resignation by coercion or duress. As an initial matter, the presumption is that Plaintiff voluntarily resigned when he signed the resignation letter. *Hargray*, 57 F.3d at 1568.

To determine whether a plaintiff resigned under coercion or duress, the court analyzes whether the employer deprived a plaintiff of free will in his or her choice. *Id.* This is an objective determination, and the plaintiff's perception about his available choices is irrelevant. *Id.* Factors the court may consider include: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel." *Id.* (citing *Stone*, 855 F.2d at 174, 177). An employee may voluntarily resign even where he or she faces a choice "between comparably unpleasant alternatives." *Id.* (quoting *Stone*, 855 F.2d at 174). "Specifically, resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges."[9] *Id.*

Here, the Rule 56 evidence shows that Plaintiff voluntarily resigned when given the choice to fight a termination for cause. Plaintiff has testified that, on September 10, 2013,

---

[9] A resignation is deemed involuntary if the employer lacked good cause to believe that grounds existed for terminating the employee or instituting criminal charges against him or her. *Hargray*, 57 F.3d at 1568. Having said that, Plaintiff has not argued in his opposition brief that the supervisors who asked him to resign lacked good cause to believe that he committed the malpractice reported by De Los Santos. (Doc. # 44 at 20-22). Moreover, the court's independent review of the Rule 56 record confirms that Pasche and Bourge had good cause to believe (and a good faith belief) that Plaintiff committed the malpractice at the heart of De Los Santos's complaint.

Pasche explained that he would "have to resign" because of certain treatment decisions he had made, and Bourge told Plaintiff that he could insist on a hearing. (Carpenter Deposition at 63). Plaintiff understood that management presented him with two options during the September 10th meeting and that he could contest the basis for his departure. (*Id.* at 66-67). While Plaintiff did not know the specific procedures for the review proceeding (*id.* at 67-68), he understood that his management of the patient's health care would be discussed along with other options for care. (*Id.* at 68-69). Plaintiff's own testimony demonstrates that he was given an alternative to resignation and that he understood the nature of the choice. *Hargray*, 57 F.3d at 1568. To be sure, Bourge warned Plaintiff that UAB would report the proceedings to the National Practitioner Database if he decided to fight a termination. (Carpenter Deposition at 63). But, the court cannot deem Plaintiff's resignation to be a coerced resignation simply because he faced unpleasant consequences from choosing to contest a termination for cause. *See Hargray*, 57 F.3d at 1569 (explaining that a resignation is not made under duress where an employee is forced to choose between "two inherently unpleasant alternatives").

Moreover, Plaintiff's testimony reveals that he had a reasonable amount of time to consider the request to resign. Plaintiff has testified that Pasche and Bourge did not demand a choice on September 10, and he cannot recall whether they gave him a deadline for deciding. (Carpenter Deposition at 67). On the morning of September 11, Pasche set up a meeting for the morning of September 12. (*Id.* at 73). This testimony indicates that Pasche and Bourge allowed Plaintiff at least one night to consider the unpleasant choice before him. Because Plaintiff received, at a minimum, one night to consider whether to resign or fight the charges raised against him, his resignation is distinguishable from the resignation at issue in *Rodriguez v. City of Doral*, 863 F.3d 1343 (11th Cir. 2017), where the employer only allowed the employee five

minutes to decide whether to resign or challenge the charges made against him. *Id.* at 1354. Although it appears that Plaintiff did not confer with counsel before signing the resignation letter, Plaintiff certainly had time to obtain legal counsel if he chose to do so. For these reasons, Plaintiff has not offered a material issue of fact to support his argument that he resigned under duress.[10] Because Plaintiff has not presented a material issue of fact to support his argument that he resigned under duress, the court concludes that -- as a matter of law -- he voluntarily resigned from his UAB faculty and UAHSF staff positions. Therefore, Plaintiff voluntarily relinquished any property interest in continued employment by UAB or Defendant UAHSF, and Defendant is entitled to summary judgment on Plaintiff's federal due process claim.

### B. The Court Declines to Continue Exercising Supplemental Jurisdiction Over Plaintiff's State-Law Cause of Action

Plaintiff has asserted a procedural due process claim under Alabama law, in addition to his federal due process claim. (Complaint at ¶ 49). Defendants removed this action from state court to federal court on the sole basis of federal question jurisdiction. (Doc. # 1 at 2). Under 28 U.S.C. § 1331, a district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Because the sole remaining Defendant is entitled to summary judgment for the § 1983 claim raised against it, no federal-law claim remains in this action. Moreover, diversity jurisdiction is inapplicable because the parties appear

---

[10] Plaintiff contends that his resignation could be classified as a coerced resignation under Alabama law because it is comparable to the resignation at issue in *Head v. Gadsden Civil Service Board*, 389 So. 2d 516 (Ala. Civ. App. 1980). This opinion does not persuade the court that the federal procedural due process claim presents a triable issue of fact because the *Head* opinion utilized a lower evidentiary burden for Alabama summary judgment motions. In *Head*, the Alabama Court of Civil Appeals held that the plaintiff presented "a scintilla of evidence" that his supervisor, a police chief, had applied improper pressure to resign and that the plaintiff's resignation had been made under duress. *Id.* at 518-19. Here, under federal law and Alabama state law, Plaintiff must present more than a scintilla of evidence that he resigned under duress in order to defeat Defendant's Motion for Summary Judgment. *See Anderson*, 477 U.S. at 252; Ala. Code § 12-21-12.

to be non-diverse. Therefore, the court must decide whether it is appropriate to retain supplemental jurisdiction over Plaintiff's state-law claim.

The court has discretion to decline supplemental jurisdiction over state-law claims once all claims over which the court had original jurisdiction are dismissed. 28 U.S.C. § 1367(c)(3). In exercising its discretion, the court considers "concerns of comity, judicial economy, convenience, fairness, and the like." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001) (internal quotation marks omitted) (quoting *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999)). The Eleventh Circuit has encouraged district courts to decline supplemental jurisdiction when federal-law claims are dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004). Because this case was originally filed in state court and removed to this court, the court must remand the state-law claim if it declines to exercise supplemental jurisdiction over it. *Lewis*, 260 F.3d at 1267.

Here, the court finds that it is appropriate to not exercise supplemental jurisdiction over the remaining claim. The court is guided by the Eleventh Circuit's encouragement to decline supplemental jurisdiction when federal-law claims are dismissed before trial. *Raney*, 370 F.3d at 1089. Moreover, the court recognizes that "[s]tate courts, not federal courts, should be the final arbiters of state law." *Flippo v. Am. Power Source, Inc.*, 20 F. Supp. 3d 1299, 1319 (N.D. Ala. 2014) (citing *Hardy v. Birmingham Bd. of Educ.*, 954 F.2d 1546, 1553 (11th Cir. 1992)). Although the outcome of this issue is not controlled by the comity doctrine, the court's ruling is certainly consistent with principles of comity. Accordingly, the court declines to continue exercising supplemental jurisdiction over the state-law claim and concludes that it is due to be remanded to state court. *Lewis*, 260 F.3d at 1267.

**IV.    Conclusion**

For the reasons explained above, the court concludes that Defendant's Motion for Summary Judgment (Doc. # 40) is due to be granted in part. Plaintiff's federal-law claim is due to be dismissed with prejudice, and his state-law claim is due to be remanded to the Circuit Court of Jefferson County, Alabama. An Order consistent with this Memorandum Opinion will be entered.[11]

**DONE** and **ORDERED** this March 9, 2018.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[11] The court has reviewed Defendant's arguments that the remaining claim is moot and that it is not a state actor capable of violating Plaintiff's due process rights. The court also has reviewed Plaintiff's arguments that Defendant is an intertwined state actor and that any mootness concerns can be remedied by amending the complaint to add claims against UAB officials in their official capacities. The Rule 56 record does not allow the court to clearly describe the authority UAHSF holds over doctors jointly employed by the UAB Department of Medicine and UAHSF. Moreover, the court recognizes that state officials can be sued in their official capacities for prospective relief, such as reinstatement, under the *Ex Parte Young* exception to sovereign immunity. *See, e.g.*, *Lane v. Cent. Ala. Comm. Coll.*, 772 F.3d 1349, 1351 (11th Cir. 2014). But, all of these issues are immaterial because Plaintiff has not offered substantial evidence that he resigned under duress. Therefore, the court need not address -- and does not decide -- the other issues presented in the parties' summary judgment briefs.